IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JUDY BAILEY, guardian *ad litem* and next
friend for M.W. and V.W., minors,

        Plaintiff,

        vs.                                  No. CIV 96-959 LH/DJS

HARRY PACHECO, RAUL GONZALES,
SHARON MULLEN, BRENDA SANDBERG,
SUSAN ELAM, MAUREEN GRINDELL,
EFFIE OSBORNE, JOHN KALEJTA, NORA
BUCHANAN, SANTIAGO OLIVAS,
ROCHELLE OLIVAS and JAMES ATKINS, in
their personal capacities acting under color of
state law,

        Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant Rachelle Olivas's Motion for Summary Judgment (Docket No. 369), filed July 1, 1999. The Court, having reviewed the Motion, the accompanying memoranda, and the applicable law, and otherwise being fully advised, finds that the Motion is well taken and will be **granted**.

Plaintiff brings this action on behalf of M.W., a three-year-old girl who suffered serious injuries while in foster care. The Children, Youth, and Families Department of the State of New Mexico (CYFD) assumed temporary custody of M.W. and her sister, V.W. when their natural mother failed to return for the children after leaving them with a neighbor. CYFD placed the children with foster parents Rachelle and Santiago Olivas, who Plaintiff alleges sexually, physically, and emotionally

abused M.W. Defendant Rachelle Olivas now moves for summary judgment on grounds that her alleged acts do not rise to the level of deliberate indifference, her acts are not clearly established as violations of constitutional law, and there is insufficient factual support for the allegations against her.

It is clearly established that children in foster care have a substantive due process right under the Fourteenth Amendment "to be reasonably safe from harm." *Yvonne L. v. New Mexico Dep't Human Servs.*, 959 F.2d 883, 893 (10th Cir. 1992). State officials such as social workers, however, are shielded from liability under 42 U.S.C. § 1983 "unless the defendants showed that they failed to exercise professional judgment," that is, that they abdicated their duty to act professionally, thereby causing the plaintiff's injuries. *Id.* at 893-94 (adopting the standard set forth in *Youngberg v. Romeo*, 457 U.S. 307 (1982) and *K.H. ex. rel. Murphy v. Morgan*, 914 F.2d 846 (7th Cir. 1990)).

Although the Court has held in this matter that Rachelle Olivas, as a foster parent, acted under color of state law and thus is subject to suit under § 1983, this does not necessarily mean that she is to be held to the same standard as social workers. In fact, it is clear to the Court that she should not.

In setting forth the professional judgment standard in *Youngberg*, the Supreme Court distinguished between professional and nonprofessional employees within the confines of a state institution for the mentally retarded:

> By professional decisionmaker, we mean a person competent, whether by education, training or experience, to make the particular decision at issue. Long-term treatment decisions normally should be made by persons with degrees in medicine or nursing, or with appropriate training in areas such as psychology, physical therapy, or the care and training of the retarded. Of course, day-to-day decisions regarding care–including decisions that must be made without delay–necessarily will be made in many instances by employees without formal training but who are subject to the supervision of qualified persons.

457 U.S. at 333 n.30.

By education, training, or experience, foster parents in general, and Rachelle Olivas in particular, fall within the nonprofessional category. Defendant is a high school graduate with no college education. She received only the minimum required training necessary to become a state-licensed foster parent. She had been a foster parent for only a matter of months prior to taking M.W. and V.W. into her home. Defendant Olivas was responsible for M.W.'s day-to-day care, but she was subject to the supervision of CYFD's professional social workers, who presumably were specifically educated, trained, and experienced in working with foster care placements. Therefore, the Court finds the deliberate indifference standard applicable to Rachelle Olivas's conduct in this matter, not the professional judgment standard, which is appropriate for the social worker Defendants. *Cf. Shaw v. Strackhouse*, 920 F.2d 1135, 1147 (3d Cir. 1990)(nonprofessional employees who provide care for involuntarily institutionalized mentally retarded individuals subject only to deliberate indifference standard).

Plaintiff alleges numerous instances of physical and emotional abuse of M.W. and David M., another child in the foster home, by both Santiago and Rachelle Olivas. As David M. is not a party to this suit, the Court will not address the alleged instances of abuse against him, the vast majority of which were by Santiago Olivas. Additionally, Plaintiff has not explained how Rachelle Olivas can be held liable for the acts of Santiago Olivas of which she was not aware. *See Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996)(plaintiff must show defendant personally participated in alleged violation). Furthermore, neither Defendant's no contest plea to criminal negligence resulting in chid abuse, nor CYFD's after-the-fact conclusion that Rachelle Olivas was guilty of physical abuse, physical neglect, and sexual abuse of M.W. are admissible evidence or even material to the

-3-

constitutional question before the Court. Thus, the allegations against Rachelle Olivas for the three-month period from May 16 to July 23, 1995, are:

1. Rachelle and Santiago Olivas slapped M.W. at the dinner table when she threw food out of her mouth and threw up;

2. Rachelle Olivas slapped M.W. once for not brushing her teeth and then brushed M.W.'s teeth hard; both foster parents brushed M.W.'s teeth with hot water and twice made her rinse her mouth with hot water;

3. the Olivases slapped or hit M.W. more than ten times when she would not take a nap;

4. the Olivases forced M.W. to eat and Rachelle Olivas used her hand to make M.W. eat food, one time a carrot;

5. the Olivases called M.W. "stupid," "brat," and "shit";

6. Rachelle Olivas shook M.W. two times;

7. Rachelle Olivas saw Santiago Olivas pull M.W.'s hair and also saw him do things like hit M.W. and she just told M.W. to stop crying;

8. Rachelle Olivas slapped her fist into her other hand in front of M.W.'s face and told her she would sell her to the gypsies; and

9. the Olivases did not assist M.W. in certain activities, such as getting in and out of the bath tub, high chair, and car seat.

(Pl's. Resp. Def. Rachelle Olivas's Mot. Summ J. at 2-5, Ex. 9.) The first seven allegations are supported by the deposition testimony of Araceli M., another foster child in the Olivas home, who was ten years old at the time.

The doctrine of qualified immunity protects government officials from individual liability under 42 U.S.C. § 1983 for actions taken while performing discretionary functions, unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When raised in a motion for summary judgment, this defense requires the plaintiff to meet a two-part test: "First, the plaintiff must show the defendant's conduct violated a constitutional or statutory right; second, the plaintiff must show the right the defendant's conduct violated was clearly established such that a reasonable person in the defendant's position would have known the conduct violated the right." *Anaya v. Crossroads Managed Care Sys., Inc.*, 195 F.3d 584, 593 (10th Cir. 1999)(quoting *Lawmaster v. Ward*, 125 F.3d 1341, 1347 (10th Cir. 1997)). The Court's first task, then, is "to determine whether the plaintiff has alleged any constitutional or statutory violation." *Jurasek v. Utah State Hosp.*, 158 F.3d 506, 516 (10th Cir. 1998)(citing *County of Sacramento v. Lewis*, 523 U.S. 833, ___ n.5, 118 S. Ct. 1708, 1714 n.5 (1998).) The Court finds that Plaintiff has not.

As the Supreme Court explained in *County of Sacramento*, the core concept of due process is protection against arbitrary action, and "only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'" 118 S. Ct. at 1715, 1716 (quoting *Collins v. Harker Heights*, 503 U.S. 115, 129 (1992)). Thus, the Court has "spoken of the cognizable level of executive abuse of power as that which shocks the conscience." *Id.* at 1717. It has described such conduct as violating the "decencies of civilized conduct," *id.* (quoting *Rochin v. California*, 342 U.S. 165, 172-72 (1952)), as "so 'brutal' and 'offensive' that it did not comport with traditional ideas of fair play and decency," *id.* (quoting *Breithaupt v. Abram*, 352 U.S. 432, 435 (1957)), and as interfering "with rights 'implicit in the concept of ordered liberty,'" *id.* (quoting *Rochin*, 342 U.S. at 172.)).

Clearly, Santiago Olivas's alleged assault and anal rape of foster child M.W. on July 23, 1995, shock the conscience. His acts severely injured M.W. and probably caused permanent damage, as alleged in the First Amended Complaint:

> As a direct and proximate cause of the acts of Defendants Santiago and Rochelle [sic] Olivas, . . . M.W. suffered nearly fatal physical injury and medical expenses, also suffered emotional distress, developmental deficits, loss of enjoyment of, and a reduction in quality of, her life and severe mental anguish . . . .

(First Am. Compl. ¶ 70.) While certainly troubling, Plaintiff's evidence against Rachelle Olivas, however, does not establish conduct rising to the level necessary to state a violation of M.W.'s substantive due process rights.

Without in any way condoning Defendant's behavior, the Court finds Plaintiff's evidence, although repugnant, cannot shock the conscience in a constitutional sense. Although Defendant challenges the factual support for Araceli M.'s allegations against her, even accepted *in toto* as presented by Plaintiff and as intentional acts, rather than deliberately indifferent or less than professionally acceptable, they are insufficient to constitute a constitutional violation. Not only is there no indication that Defendant's actions were carried out in a sadistic or brutal manner, but there is also no indication of any severe harm. M.W. was seen by a number of physicians for unexplained bruising and other reasons during this period, and not one reported suspected physical abuse or indicated such a diagnosis in M.W.'s records. That Dr. Webster reported emotional abuse to CYFD personnel after observing the "gypsy" incident in the hospital pharmacy waiting area is in no way binding on the Court in reaching the constitutional question. Obviously, slapping, hitting, shaking, and other physical and emotional abuse can be extreme enough to amount to a constitutional violation, but such is not the case here. *Cf., e.g., Yvonne L. v. New Mexico Dep't Human Servs.*, 959

F.2d 883 (10th Cir. 1992)(child under twelve years old sodomized and raped by another resident in foster care facility); *Garcia v. Miera*, 817 F.2d 650 (10th Cir. 1987)(school corporal punishment rises to substantive due process violation when force applied causes injury so severe, so disproportionate to need presented, so inspired by malice or sadism, rather than merely careless or unwise excess of zeal, that amounts to brutal and inhumane abuse of official power literally shocking to the conscience; in first beating, nine-year-old girl held up by ankles, hit several times with split board of substantial size on front of legs until bled, causing permanent scar; second beating caused buttocks to be bright red with crease across both, pain for three weeks, examining doctor stated had not seen bruises like that from routine spankings, nurse stated would have reported as child abuse if child had received injury at home; allegations of both beatings sufficiently stated substantive due process violations); *Abeyta v. Chama Valley Indep. Sch. Dist.*, 77 F.3d 1253 (10th Cir. 1996)(substantive due process claim must be something more than ordinary tort to be actionable under § 1983; while psychological harassment might be severe enough to constitute substantive due process violation, teacher calling twelve-year-old female student prostitute in front of class and classmates taunting her over one-and-one-half months does not reach high level of brutal and inhumane abuse of official power literally shocking conscience, whether done with indifference or deliberate intent to cause psychological harm); *K.H. v. Morgan*, 914 F.2d 846 (7th Cir. 1990)(five-year-old foster child beaten, sexually abused, denied necessary psychological therapy, and moved nine times over four-year period); *Taylor v. Ledbetter*, 818 F.2d 791, 792, 794-95 (11th Cir. 1987)(allegations that two-year-old "willfully struck, shaken, thrown down, beaten and otherwise severely abused," rendering her permanently comatose, states fourteenth amendment liberty interest to be free from infliction of unnecessary pain and right to physical safety); *Doe v. New York Dep't Soc. Servs.*, 649 F.2d 134 (2d Cir. 1981)(for six

or seven years from about age ten, girl regularly, frequently beaten by foster father with hands and belt all over body, thrown down stairs, lacerated with hunting knife, confined to room for days, and forced to have intercourse and oral sexual relations).

**IT IS HEREBY ORDERED** that Defendant Rachelle Olivas's Motion for Summary Judgment (Docket No. 369), filed July 1, 1999, is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant Rachelle Olivas is **DISMISSED** from this action.

**IT IS FURTHER ORDERED** that Defendant Rachelle Olivas's First Motion in Limine (Docket No. 462), filed October 27, 1999; Rachelle Olivas's Motion to Exclude Testimony of Virginia Gillmer; Rachelle Olivas's Second Motion in Limine (Docket No. 466), filed October 27, 1999; Plaintiff's Motion for Reconsideration of Order Regarding Testimony of Mary Grealish (Docket No. 520), filed November 8, 1999; and Defendant Rachelle Olivas's Motion for Order Compelling Attendance of Rachelle Olivas at Trial (Docket No. 561), filed January 3, 2000, are **DISMISSED AS MOOT**.

_____
**UNITED STATES DISTRICT JUDGE**